# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRENCE DERYL BROWNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 10-1361 |
| v. ) | Chief Judge Lancaster |
| ) | Magistrate Judge Bissoon |
| SUPERINTENDANT LOUIS FOLINO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that the motion to dismiss (Doc. 19) filed by Defendants Jin and Lukas be granted with prejudice. It further is recommended that Plaintiff's motion to dismiss Defendant Folino (Doc. 23) be granted insofar as Plaintiff seeks to dismiss Defendant Folino from this case, and denied in all other respects. It also is recommended that Plaintiff's retaliation claims, to the extent that he makes them, be dismissed with prejudice *sua sponte*. Finally, it is recommended that that Defendant Folino's motion to dismiss (Doc. 15) be denied as moot.

### II. REPORT

Plaintiff Terrence Deryl Browne ("Plaintiff") is a state prisoner who is incarcerated at the State Correctional Institution at Greene ("SCI-Greene"), in Waynesburg, Pennsylvania. Plaintiff brings the instant lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*.,

alleging violations of the Eighth and Fourteenth[1] Amendments to the Constitution of the United States by the above-named Defendants. Compl. (Doc. 3) at 2. This suit commenced when Plaintiff placed the complaint in the prison mail system on October 12, 2010. (Doc. 1-2) at 1. Plaintiff was granted leave to proceed in forma pauperis ("IFP") on October 15, 2010. (Doc. 2). On January 3, 2011, Defendant Folino moved for dismissal. (Doc. 15). On June 28, 2011, Plaintiff filed a motion, (Doc. 23), in which he conceded that he had not stated a claim against Defendant Folino, moved for his dismissal, and asked for an order from this Court compelling SCI-Greene to provide him with increased access to the prison's law library. Defendants Jin and Lukas[2] filed their motion to dismiss on January 11, 2011. (Doc 19). Plaintiff responded thereto on April 20, 2011. (Doc. 22). These motions are ripe for disposition.

A. Facts

The following is a recitation of Plaintiff's factual allegations, the veracity of which must be presumed for the purposes of the instant motions. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Plaintiff claims arise from two independent incidents that occurred more than one year apart. First, Plaintiff alleges that on October 6, 2008, he suffered from an asthma attack while in his cell. (Doc. 3) at 3. He pressed the emergency call button, informed an unknown corrections

---

[1] Plaintiff makes no factual allegations in support of his legal conclusion that his rights under the Fourteenth Amendment were violated. Thus, this claim for relief should be dismissed. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[2] Defendant Lukas appears to have changed her surname to "Antanovich" at some point during this litigation, and the filings in this case use both names to refer to her. See (Doc. 22) at 1. In an effort to remain consistent with the docket, this Defendant will be called "Defendant Lukas" throughout this Report.

2

officer that he was having "an uncontrollable asthma attack[,]" and requested medical assistance. Id. The call was acknowledged, but no help came, so, after 10 minutes, Plaintiff pressed the call button again. Id. Plaintiff informed the responding officer that his breathing problems had become worse, and was told that medical personnel were aware of the situation. Id. Plaintiff reiterated his complaints to a passing corrections sergeant several minutes later, and added that his rescue inhaler was not providing adequate relief. Id. at 3-4.

A few minutes later, Plaintiff was escorted to the prison's medical facility on the orders of Defendant Jin, who is a physician. Id. at 4. Plaintiff was housed in the sole available cell, and asked to speak with medical staff immediately. Id. Plaintiff was informed that the medical staff would call Defendant Jin. Id. at 5.

About 15 minutes later, a nurse arrived to give Plaintiff an aerosol treatment for his asthma. Id. Plaintiff argued with her that "if [he were] not treated with intraveinous [sic] steroid injections, multiple aerosol treatments and large dose [sic] of prednisone that the asthma will culminate into respiratory arrest as it did previously and left Plaintiff in 2 (two) month coma [sic], and in need of lung repair surgery." Id. The nurse informed him that she could "only do as [Defendant] Jin order[ed,]" and walked away. Plaintiff asserts that the aerosol treatment had no effect, and that he repeatedly asked for Defendant Jin, who arrived approximately two hours after the onset of Plaintiff's condition. Id. at 5-6. Upon being informed of the situation, Defendant Jin prescribed various treatments, and "thereafter Plaintiff did recouperate [sic][.]" Id. at 6. Plaintiff was admitted to the prison medical facility, and remained there for three days. Id.

Second, Plaintiff alleged that, on October 9, 2009, he experienced extreme pain in his left arm. Id. He contacted prison staff multiple times over a roughly 90-minute period of time, but his pleas for help merely were met with responses that "medical [was] coming." Id. at 7-8. At

3

this point, Plaintiff told the control unit that he must be having a heart attack, and he was taken to the prison's medical facility. Id. at 8. Plaintiff explained his symptoms to Defendant Jin indicating that "the pain felt like it was in the bone itself as if electricity was running down the arm from the shoulder of left [sic] arm down to the hand of the same arm. Explained [sic] the incapacity of the left arm and hand." Id. Defendant Jin prescribed vicodin shots, and it appears that Plaintiff also received several injections of toridol and valium. Id. These helped the pain become tolerable for a few minutes. Id. at 8-9.

After about 20 minutes, the pain returned, and was unbearable. Id. at 9. Plaintiff informed a nurse of this fact, who in turn informed Defendant Jin, who prescribed another toridol injection. Id. This allegedly provided no relief, and Plaintiff continued to scream in pain with no results. Id. Plaintiff was admitted to the prison medical facility, and for two days requested transfer to an outside hospital. Id. at 9-10. Plaintiff also alleges that he was "confined to the psychiatric ward as punishment for the excessive screaming out in excruciating pain."[3] Id. at 10. On October 10, 2009, Plaintiff was examined by Defendant Lukas, who denied his requests to be taken to an outside hospital because he had escaped from one before, and posed a security risk. Id. Plaintiff admits that Defendant Lukas then prescribed him a drug called "flexoril [sic],"[4] which ultimately did not alleviate Plaintiff's suffering. Id. at 11.

---

[3] Plaintiff also alleges that he was given a prison misconduct for excessive screaming and the use of "abusive language." (Doc. 3) at 11. Plaintiff does not allege who gave him the misconduct, or whether it resulted in any disciplinary proceedings or sanctions.

[4] Flexeril is a brand name for cyclobenzaprine. This drug is a muscle relaxant, and is used "to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries." See Cyclobenzaprine – PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/ (last viewed on Sept. 7, 2011).

4

On October 11, 2009, Defendant Jin injected Plaintiff with kenalog, which reduced his pain by about "ninety percent[.]" Id. at 11-12. Plaintiff was discharged on October 13, 2009. Id. at 12.

B. Statute of Limitations

Defendants Jin and Lukas argue that Plaintiff's claims arising from October 6, 2008, should be dismissed as time-barred. It is well established that the statute of limitations of any section 1983 claim is the forum state's statute of limitations for personal injury suits. Mumma v. High Spec, Inc., 400 F.App'x 629, 631 (3d Cir. 2010) (citing Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (overruled on other grounds)). The applicable statute of limitations in Pennsylvania is two years. 42 Pa. Cons. Stat. Ann. § 5524.

The earliest date that Plaintiff could have put his complaint in the prison mail system is October 12, 2010 – more than two years after the events of October 6, 2008. However, Plaintiff counters that he was actively pursuing the administrative grievance of these claims – a prerequisite for him to bring this suit under 28 U.S.C. § 1997e – until January 6, 2011.[5] (Doc. 22) at 4. Plaintiff argues that the statute of limitations should be tolled until that date, rendering timely his claims from October 6, 2008. Id.

It appears that, to date, the United States Court of Appeals for the Third Circuit has declined to decide the issue of whether an inmate's attempt to exhaust the administrative remedies available to him tolls the statute of limitations in a section 1983 action. See Dasilva v. Sheriff's Dep't, 413 F.App'x 498, 502 n.3 (3d Cir. 2011). However, various district courts

---

[5] While there is no evidence on the record that Plaintiff's administrative grievance and subsequent appeals lasted until January 6, 2008, or existed at all, such an issue is better resolved on summary judgment.

5

within this circuit have found that tolling of the statute should occur during this period of time. See Beckett v. Dep't of Corrs., No. 1:CV-10-0050, 2010 WL 5092973, at *3 (M.D. Pa. Dec. 8, 2010) (citing cases). This authority is persuasive. Accordingly, Defendants Jin and Lukas's motion to dismiss (Doc. 19) should be denied with respect to this argument.

C. Eighth Amendment Analysis

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In order to succeed on a claim of denial of medical treatment in violation of his Eighth Amendment rights, an inmate must show: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. With respect to the first element of this standard, a medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment." Monmouth Cnty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention. Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second element – deliberate indifference – the Supreme Court has adopted a subjective approach. Farmer v. Brennan 511 U.S. 825, 842 (1994). Farmer teaches that a showing of knowledge of "a substantial risk of serious harm" requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). The

United States Court of Appeals for the Third Circuit has held that this standard may be met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice, or mere disagreement over a course of treatment, are not violations of the Eighth Amendment. Spruill, 372 F.3d at 235. Additionally, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845.

Plaintiff has failed to allege facts that, if true, would lead to the plausible conclusion that Defendants Jin and Lukas exhibited deliberate indifference to his medical need. With respect to Plaintiff's asthma attack on October 6, 2008, his allegations of fact show that Plaintiff was taken to SCI-Greene's medical facility on Defendant Jin's orders. Plaintiff's initial aerosol treatment also was ordered by this Defendant. Additionally, when Defendant Jin examined Plaintiff after the aerosol treatment was given, and realized that it was not working, Plaintiff's allegations indicate that Defendant Jin ordered a more aggressive treatment, which ultimately alleviated Plaintiff's symptoms. Clearly, these are not the acts of an individual wantonly refusing to provide medical treatment.

Likewise, Plaintiff has failed to state plausible claims of deliberate indifference against Defendants Jin and Lukas with respect to the alleged events of October 9-11, 2009. Plaintiff's allegations demonstrate that he was given several medications for his pain, and that his course of

7

treatment was modified when these medications proved to be ineffective. Additionally, while Plaintiff's requests to be transferred to an outside hospital were not granted – allegedly for non-medical reasons – his treatment was never discontinued or delayed, nor were Defendants' attempts to modify his treatment in order to make it more effective. Additionally, the undersigned notes that the injections of kenalog that were administered by Defendant Jin – and alleviated Plaintiff's pain – were not provided in an outside hospital, but at SCI-Greene. Furthermore, Plaintiff's assertion that, given their medical training, these Defendants "should have known of [Plaintiff's] very serious nerve condition[,]" see (Doc. 22) at 8 (emphasis in original), is entirely contrary to the subjective evaluation of deliberate indifference taught by the Court in Farmer. See 511 U.S. at 837.

Plaintiff's factual allegations demonstrate a clear disagreement of the methods of treatment that he received, but do not show that care was withheld or delayed, either intentionally or otherwise. Accordingly, his Eighth Amendment claims against Defendants Jin and Lukas should be dismissed. Additionally, as it is clear that leave to amend these claims would be futile, dismissal should be with prejudice. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

D. Retaliation Claims

Plaintiff alleges that, during the incident in October of 2009, he spent a fair amount of time "screaming out in excruciating pain." (Doc. 3) at 10. As a result of this, he was housed in the prison's psychiatric ward, and was issued a misconduct for "excessive screaming and use of

8

'abusive or obscene' language." Id. at 11. A fair reading of Plaintiff's complaint indicates that his allegations may be an attempt to state a claim for retaliation.[6]

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (internal quotes and citation omitted); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In order to state a *prima facie* case of retaliation, a prisoner must allege facts which demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). To show an "adverse action," Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his

---

[6] While Defendants do not address this possible claim in their briefs, it is still proper for the Court to analyze its viability at this stage in the litigation. 28 U.S.C.§ 1915 requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.
28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 F.App'x 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D. Pa. Feb. 26, 2009) (Cercone, J.).

[constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting Allah v. Seiverling, 229 F.3d at 225).

Plaintiff's factual allegations are insufficient to support a plausible claim of retaliation. First, it is doubtful that screams of pain – regardless of whether they include abusive or obscene language – are constitutionally protected acts. Even if they were, there is no indication in Plaintiff's filings that being placed in the psychiatric ward of the prison medical center for four days – while receiving medical treatment for other issues – would in any way deter an individual of ordinary firmness from continuing to scream due to pain. The same is true of the mere receipt of a prison misconduct report, the resolution of which is left to this Court's imagination. Additionally, Plaintiff does not allege that any Defendant is responsible for his housing in the psychiatric ward or his receipt of the misconduct report. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (in order for section 1983 liability to attach, a plaintiff must show a defendant's personal involvement in the alleged wrongdoing). Accordingly, Plaintiff's retaliation claim, to the extent that it exists, should be dismissed. Additionally, as it is clear that leave to amend would be futile, dismissal should be with prejudice.

E. Defendant Folino

Plaintiff concedes that Defendant Folino was sued in error, and moves for his dismissal.[7] (Doc. 23) at 1. Accordingly, all claims against this Defendant should be dismissed with

---

[7] In this same motion, Plaintiff asks this Court to order SCI-Greene to give him more time in the prison's law library. (Doc. 23) at 2. This request should be denied for a number of reasons. First, this case is still at the motion to dismiss stage. Plaintiff need only plead facts that state a plausible claim for relief. See Twombly, 550 U.S. at 570. This is a task with which additional access to the law library will not help. Second, Plaintiff enjoys the liberal review of his pleadings afforded to all pro se litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972). (continued . . .)

prejudice. Additionally, Defendant Folino's motion to dismiss, (Doc. 15), should be denied as moot.

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the motion to dismiss (Doc. 19) filed by Defendants Jin and Lukas be granted with prejudice. It further is recommended that Plaintiff's motion to dismiss Defendant Folino (Doc. 23) be granted insofar as Plaintiff seeks to dismiss Defendant Folino from this case, and denied in all other respects. It also is recommended that Plaintiff's retaliation claims, to the extent that he makes them, be dismissed with prejudice *sua sponte*. Finally, it is recommended that Defendant Folino's motion to dismiss (Doc. 15) be denied as moot.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report and recommendation must be filed by September 23, 2011. Failure to file objections will waive the right to appeal. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: September 9, 2011                    s/Cathy Bissoon
                                                                           CATHY BISSOON
                                                                           UNITED STATES MAGISTRATE JUDGE

---

Third, there is a well-established policy of non-interference by the courts in the day-to-day operation of prisons. See Tilley v. Allegheny Cnty. Jail, No. 09-299, 2010 WL 1664900, at *5 (W.D. Pa. Feb. 18, 2010) (internal citations omitted) (Hay, C.Mag.J.). Given that Plaintiff states that he has access to the law library, there is no reason to interfere with the running of SCI-Greene's library at this time, and this motion should be denied.

cc:
**TERRENCE DERYL BROWNE**
DC2474
175 Progress Dr.
Waynesburg, PA 15370